FRANCISCO ESCODA, JR., Plaintiff and Appellee, *v.* HULL DOBBS CO. OF PUERTO RICO (COURTESY MOTORS OF PUERTO RICO), KEN LANCASTER, JOSÉ CRUZ VÉLEZ, and JULIO MEJÍA LIZARDO, Defendants and Appellants.

No. R-70-78.      Decided December 9, 1971.

*Orlando J. Antonsanti* and *Ernesto González Piñero* for appellants. *Dapena Dapena & Toro* for appellee.

PER CURIAM: In a civil action for malicious prosecution, the Superior Court, San Juan Part, rendered judgment ordering defendant-appellant to pay to appellee the amount of $2,000 for damages, plus costs, and $500 for attorney's fees.

About the year 1962, appellee Francisco Escoda, Jr., was working as automobile salesman in Santa Rosa Plaza in Bayamón, for the firm "Courtesy Motors of P.R.," now "Hull Dobbs Co. of P.R." Codefendants José Cruz Vélez and Julio Mejía Lizardo were General Manager and Commercial Manager and Comptroller respectively of said firm. The only persons authorized to sign purchase orders were the managers, among whom were the aforementioned codefendants, and Marcelino Rivera, manager of Santa Rosa Plaza office.

In the process of revision of the accounts payable, there appeared an official purchase order of the corporation signed by Escoda, Jr., and by virtue of which he had bought in the name of the corporation automobile parts amounting to $66.

Immediately, Escoda, Jr., was discharged from his employment by letter of April 10, 1962, which reads as follows:

"Mr. Francisco Escoda, Jr.
Caguas, P.R.

Sir:

I want to confirm your discharge as salesman, which was verbally made by your immediate boss, Mr. Marcelino Rivera, Manager of our Bayamón Branch, by reason that you maliciously took and signed an official purchase order of this corporation, with which you obtained auto parts valued at $66, without having authorization or power therefor.

Very truly yours,

(Sgd.)  José Cruz Vélez
General Manager

JCV/lm
cc:  Seafarers, P.R. Division
Welfare Plan."

Escoda, Jr., was Chairman of a Union or brotherhood of salesmen and as such he had to intervene and settle problems arising between the salesmen and the managers of the defendant company.

Immediately after this discharge, managers Cruz Vélez and Mejía Lizardo requested the detective to conduct an investigation of the events. Detective Otero received information from both managers and from other employees of defendant corporation, "to the effect that Escoda took and signed an official order of the corporation, without being duly authorized therefor, taking possession of the property bought, which he used for his own benefit."

Based on this information, detective Otero swore to a complaint against Escoda for the commission of an offense of false pretenses, charging him with having ". . . on the date, time, and place before indicated, appeared at the business of Juan M. Nazario, where he bought, in the name of Julio Mejía Lizardo, auto parts . . . for which he signed a receipt

in the name of appellant, without being authorized by the latter to make commercial transactions, and taking possession of the property which he used for his own benefit and personal profit, and thus defrauding by deceit the prejudiced party in his lawful interest."

After the determination of probable cause against him, Escoda was arrested and imprisoned until, some hours later, he posted a bail bond of $600.

The purchase order was issued in the name of Courtesy Motors, but it was signed, as well as the invoice, by Escoda with his own name.

Escoda was acquitted of the offense of false pretenses and later on he brought the action which gave rise to this appeal.

The trial court, among other findings and grounded therefor on the evidence, made the following finding:

"4.—On March 27, 1962, plaintiff Francisco Escoda, Jr., needed to buy some auto parts and used one of defendant corporation's official purchase orders, having written in said order a statement of the auto parts to be bought and having signed said order with his own signature. Some days before, and specifically March 22, 1962, plaintiff was authorized by his immediate manager, Marcelino Rivera, to effectuate the purchase of a 55 Buick motor with the discount granted to the Courtesy Motors (Plaintiff's Exh. 3), to be installed in the vehicle sold by Escoda to a client in Caguas. For reasons unknown to us, Escoda, instead of buying said motor, decided to buy certain parts needed by the motor of said vehicle, utilizing the aforementioned procedure. (Plaintiff's Exh. 2.)"[1]

From the facts found proved by the trial court it is inferred that the purchase of parts for the motor of the automobile, made by Escoda, instead of buying the motor itself, was beneficial to Courtesy Motors, and that plaintiff Escoda did not have the intention of defrauding the latter, inasmuch

---

[1] The procedure consists in utilizing the official purchase orders of Courtesy Motors.

as the purchase order as well as the invoice for the value of the parts was signed by Escoda with his own name.

Whether the complaint filed by detective Otero was mistakenly or correctly denominated, the truth is that it alleges the facts informed to him by the managers and other employees of the defendant corporation.

Undoubtedly, defendant's action, as correctly determined by the trial court, was the efficient cause of maliciously putting the law into motion in order to sustain the judicial action against Escoda. See *Parés* v. *Ruiz*, 19 P.R.R. 323 (1913); *Rivera* v. *Casiano*, 68 P.R.R. 177 (1948); *Jiménez* v. *Sánchez*, 76 P.R.R. 347 (1954).

Judgment will be rendered affirming that of the Superior Court.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.